IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| CLAYTON RYAN CARLYLE ) | Bankruptcy Case No. |
| SARAH ELLEN CARLYLE, ) | 06-41670-7 |
| Debtors. ) | |
| _____ ) | |
| DOUGLAS DELANEY, ) | |
| Plaintiff, ) | |
| v. ) | Adversary No. 06-4188 |
| ) | |
| CLAYTON RYAN CARLYLE ) | |
| ) | |
| and ) | |
| ) | |
| SARAH ELLEN CARLYLE, ) | |
| ) | |
| Defendant. ) | |

**<u>MEMORANDUM OPINION</u>**

This adversary comes before the Court on the Complaint to Determine Dischargeability of Debt ("Complaint") filed by plaintiffs Douglas and Katherine Delaney[1] ("Plaintiffs") against Clayton and Sarah Carlyle ("Defendants" or "Debtors"). Plaintiffs seek that the debt owed to them by Debtors be deemed nondischargeable under 11 U.S.C. § 523(a)(6). This is a core proceeding under 28 U.S.C. §157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that any damage caused to the property does not meet the standards of a willful and malicious injury under 11 U.S.C. § 523(a)(6). Accordingly, Plaintiffs' request to have

---

[1] Plaintiff Katherine Delaney was joined by a Motion to Join filed by Douglas Delaney, which was granted on October 24, 2006.

the debt declared nondischargeable is denied.

## I. FACTUAL BACKGROUND

Debtors entered into a residential real estate lease with Plaintiffs for the period from September 1, 2005 through August 31, 2006. Pl. Ex. 1. The monthly rental amount was $650 per month. Debtors owned a large dog and two cats. Debtors defaulted on the lease on or about March 26, 2006, and failed to pay the remaining amounts due under the lease for April 2006 through August 2006. Complaint & Answer, ¶¶ 8. Plaintiff Mr. Delaney testified that Debtors provided him with two days notice of their intent to vacate the premises. On July 5, 2006, Debtors filed a bankruptcy petition under Chapter 7. On September 19, 2006, Plaintiffs filed an adversary proceeding seeking to establish that a debt owed to them in the amount of $7,800 for damage to the rental property by Debtors is non-dischargeable under § 523(a)(6). Plaintiffs contend that Debtors willfully and intentionally caused substantial damage to the property by allowing their pets to destroy certain parts of the interior and exterior of the home, including but not limited to carpets, flooring, decking, lawn, air conditioner unit, and interior and exterior doors and screens. Debtors deny that they intentionally allowed their pets to cause any damage and further contend that they remedied many of the identified problems.

On November 29, 2006, the Court held an evidentiary hearing on the matter. Plaintiffs introduced photographs taken of the premises after Debtors had moved out. Pl. Exs. 2, 3, 4, 5 & 6. The photos showed stains on the carpet, stains on the hardwood floor, broken shrubbery, damaged decking, ripped window blinds and damaged lawn. Photos were also introduced which showed the condition of the premises prior to the time Debtors lived there. Pl. Ex. 7. Plaintiffs

and Debtors also both testified regarding the alleged damages.

## II. DISCUSSION AND ANALYSIS

In a nondischargeability claim under 11 U.S.C. § 523(a), the burden of proof falls on the creditor to prove the elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Exceptions from discharge, however, are strictly construed so as to give the maximum effect to the policy of the Bankruptcy Code to provide debtors with a "fresh start." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) affirming the Eighth Circuit's opinion in *Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir.1997) (en banc) (debt cannot be exempt from discharge unless it is based on an intentional tort); *Adams v. Zentz*, 157 B.R. 141, 144 (Bankr. W.D. Mo. 1993). Plaintiffs' complaint asserts that Debtors damaged the house and failed to pay remaining amounts owed under the lease. They claim that any debt arising out of Debtors' actions arose from willful and malicious conduct which should not be discharged under 11 U.S.C. § 523(a)(6).[2]

Under § 523(a)(6), a debtor is not discharged of any debt for "willful and malicious injury" to the property of another. *Johnson v. Fors*, 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001). In the Eighth Circuit, the terms "willful" and "malicious" are two distinct elements, each of which must be shown to establish an exception to discharge. *Fisher v. Scarborough (In re Scarborough)*, 171 F.3d 638, 640 (8th Cir. 1999).

---

[2]Section 523(a)(6) of the Bankruptcy Code provides :
> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt-
> . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Plaintiffs contend that Debtors willfully and intentionally caused substantial damage to the leased property by allowing their pets to destroy interior and exterior areas of the property. While Plaintiffs may have a claim for property damage under state law, this alone does not necessarily satisfy the requirements for nondischargeability under § 523(a)(6). *See Barclays American Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875 (8th Cir. 1985) (finding conversion of property alone not enough to prevent discharge of debt); *see also, In re Kibbee*, 287 B.R. 239 (Bankr. E.D. Mo. 2002) (debt for property damage to rental property dischargeable where not found to be caused by willful and malicious conduct). Plaintiffs must also demonstrate, pursuant to the terms of that statute, that the injury to their property was willful and malicious.

### 1. Willfulness

In *Long,* 774 F.2d at 881, the Eighth Circuit defined "willful" as "headstrong and knowing" conduct. The United States Supreme Court addressed the term "willful" for purposes of § 523(a)(6) and concluded that:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury .... the (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts.

*Geiger*, 523 U.S. at 61.

Accordingly, under § 523(a)(6), Plaintiffs must demonstrate that Debtors intended to injure Plaintiffs' property. Plaintiff Mrs. Delaney testified that she had lived in the house prior to the time that Debtors moved in and that the property was in good condition when she moved

out and that the carpet was in good condition with no stains.  Mrs. Delaney also testified that a hose and breaker box door were missing when Debtors moved out, blinds were ripped, grass and shrubbery in the backyard was damaged and the deck, backdoor and air conditioner unit were chewed and damaged by Debtors' dog.  Plaintiff Mr. Delaney testified to the same damages and also testified that he arranged for the repairs to be made and that they totaled $7,800.  He also testified that he ended up having to sell the house "as is" because he was unable to make all the necessary repairs to the damages allegedly caused by Debtors.  Plaintiffs submitted photographic evidence of some of the damage as described above as well as receipts for certain repairs to the damage and lists of missing items.  Pl. Exs. 2-7; 8-12.  Also, Plaintiffs submitted an answering machine tape of a message left by Mrs. Carlyle on March 29, 2006, in which she acknowledged some of the damage and states that it would be cleaned or taken care of.

Debtors' submitted testimony that contradicted Plaintiffs' recitation of the facts.  Debtors both testified that they did not intend for any damage to be done to the property by their dog.  Debtors submitted a list written on cardboard left for them by Mr. Delaney.  The list requested that they fix outlet covers and switches in bedrooms; bedroom shades; cover for breaker box in garage; and damage to lawn and shrubbery caused by their dog.  Def. Ex. 2.  Mrs. Carlyle testified that they replaced a broken shrub, a hose and the ripped window shades and the other allegedly missing items were not missing but in fact still inside the house or garage.  Mr. Carlyle testified that he put the outlet covers, switches and breaker box door back on.  Further, Mr. Delaney admitted in his testimony that the items listed on the cardboard list were completed.  Mrs. Carlyle's father was called as a witness and testified that he helped Debtors lay grass seed and straw in the backyard to repair the damaged lawn.  Debtors submitted a receipt that shows

5

the purchase of a hose, blinds, grass seed and a shrub. Def. Ex. 1.

Photographic evidence demonstrated that the property leased to the Debtors was in good condition prior to the commencement of their occupancy. Similar photographic evidence shows both interior and exterior damage to the property after they vacated it. The Court is convinced that Debtors and their animals damaged the property in numerous ways while they occupied it and the Plaintiffs, therefore, have a claim against Debtors for that damage. The Court is, however, equally convinced that Plaintiffs have failed to establish that that damage was done with an intent to injure Plaintiffs and that it should therefore be nondischargeable pursuant to § 523(a)(6). The Court reaches that conclusion for several reasons. As noted, Plaintiff Douglas Delaney, after his visit to the property upon receiving notice of the Debtors' intent to vacate it, created a list of items for the Debtors' attention. The Court listened to the taped message left by Debtor Sarah Carlyle in response to the list. While it was difficult to hear every word of the message, it was clear the essence of her response was to acknowledge that certain things had been damaged and to assume responsibility for making them right. The testimony indicates that Debtors did make an honest, if incomplete, attempt to remedy the problems created by their occupancy.

Plaintiffs complain that the Debtors' dog apparently chewed through a hose on the air conditioning unit. Mrs. Carlyle indicated that she was unaware of that damage, believed that her dog could not have reached the air conditioning unit given how and where he was tethered and that the dog was either on chains or in kennels during the evening. She further testified that she had never seen the dog chewing on the air conditioner hose. As to the damage to the deck, she testified that there were some worn spots and chewed areas on the deck at the time they moved

in, but candidly admits that their dog may have further damaged the deck. She acknowledged their dogs damaged one of the backyard shrubs, limbs having been broken off when chains restraining the dog were wrapped around them. In response, Debtors bought a replacement shrub and although they did not plant it, left it in the house. The outlet covers which had been removed from the nursery were replaced. Another of Plaintiffs' complaints was damage to the screen door leading to the back porch. Mrs. Carlyle testified that there was a small hole in the rear screen caused by her neighbor's dog. She had removed the screen door and purchased a screen kit to do the repairs, although never installed it. The screen door was left at the premises. Plaintiffs also contended that certain solar lighting that had lined the driveway was missing when they again acquired possession of the premises. Mrs. Carlyle testified, without contradiction, that because only approximately three of the eight solar lights functioned, Debtors took them up and placed them in a crawl space in the garage where they were still located at the time they vacated the property. Plaintiffs also contended certain curtain rods and curtains were missing. Mrs. Carlyle testified that she had replaced the curtains and removed the rods, but had placed both the rods and the curtains in a closet in the house where they were still located at the time they vacated the house. Debtors acknowledge their dog damaged the yard. They enlisted her father to assist in cleaning up the dog feces and spreading seed they purchased.

     The most puzzling aspect of the evidence is the damage to the carpet. Plaintiffs contend that the carpet was thoroughly stained by urine and feces when Defendants vacated the premises. They testified that attempts to clean the carpet were unsuccessful and that it needed to be replaced. They introduced photographs of stains on the carpet and on the underlying wood floors. Mr. Delaney admitted that he did not observe the stains or perceive the odor upon his

first visit to the property after receiving the notice to vacate, but claims that the stains were obscured by the furniture that had been piled into the living room and that the odor was obscured by air fresheners employed throughout the house. He claims the odor was so overwhelming on his second visit, however, that he vomited after entering the living room. Mrs. Carlyle testified that Mrs. Delaney had cats which roamed freely through the home when she lived there and that the carpet bore some stains when they moved in, but concedes that they noticed no odors of cat urine. She claims to have cleaned the carpet twice during their occupancy and once after they moved out with a steam cleaning machine, not noticing evidence of cat urine. She admits to having utilized deodorizers in her home, but denies the implication that they were employed to mask an odor of cat urine, stating that she had done so in their prior residence as well to fight odors from chemicals used in her husband's business.

     In addition to the testimony of Sara Carlyle, Defendants also introduced evidence from others who had been in the home during their occupancy and did not notice an odor of cat urine. Both of their fathers testified at the hearing that they had been in the home on several occasions and smelled no such odor. Obviously, both witnesses, as the parents of the Debtors, are not unbiased. After listening to their uncontradicted testimony and observing them, the Court, however, finds no reason to believe that they did not testify honestly or to doubt their credibility.

     Accordingly, while it is clear that the property suffered damage for which Debtors were responsible during the period of their occupancy, the Court concludes that Plaintiffs have failed to establish that that damage was intentional. The Court sympathizes with the Plaintiffs who were left with the property in a condition rather different from the one in which it was entrusted to the Debtors. However, Plaintiffs' evidence fails to rise to the level of demonstrating that

Plaintiffs' claim against the Debtors arises from willful and malicious conduct such that it should be nondischargeable under § 523(a)(6). As noted, such an injury requires proof that Debtors acted with an intent to injure Plaintiffs or their property and the evidence fails to establish that the condition of the house was the result of such an intention. *See Kibbee*, 287 B.R. at 244; *see also, In re King*, 258 B.R. 786, 797 (Bankr. D. Mont. 2001) (rental property left in poor condition was not kind of injury contemplated by § 523(a)(6)).

2. Maliciousness

Had the Court determined that Debtors' actions were willful, the Court would also have to address the question of whether they were also malicious. In order to have a meaning independent from willful, "...malice must apply only to conduct more culpable than that which is in reckless disregard of creditors' interests and expectancies." *Erickson v. Halverson (In re Halverson)*, 226 B.R. 22, 26 (Bankr. D. Minn.1998) (citing *Long*, 774 F.2d at 881). "An injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's tortious conduct was certain or almost certain to cause harm." *In re Stage*, 321 B.R. 486, 493 (B.A.P. 8th Cir. 2005) (citing *Waugh v. Eldridge (In re Waugh)*, 95 F.3d 706, 711 (8th Cir. 1996)); *see also e.g., In re Miera* 926 F.2d 741, 743 (8th Cir. 1991); *Mercury Marine Acceptance Corp. v. Wheeler (In re Wheeler)*, 96 B.R. 201, 205 (Bankr. W.D. Mo.1988); *Cassidy v. Minihan*, 52 B.R. 947, 950 (W.D. Mo. 1985). "Malicious for purposes of § 523(a)(6) means that the debtor targeted the creditor to suffer the harm resulting from the debtor's intentional, tortious act." *Halverson*, 226 B.R. at 26. "A wrongful act is malicious if...there exists a 'knowing wrongfulness or knowing disregard of the rights of another'." *Fors*, 259 B.R. at 137 (citing *Erickson v. Roehrich (In re Roehrich)*, 169 B.R. 941, 945 (Bankr.D.N.D.1994)).

This Court may consider both direct evidence of Debtors' subjective state of mind and evidence of the surrounding objective circumstances, and then may make appropriate inferences as to whether Debtor harbored the proscribed intent. *In re Long*, 774 F.2d 875.  For the same reasons discussed above, the Court does not believe that Plaintiffs' have shown that Debtors had the requisite intent to satisfy the "malicious" requirement of § 523(a)(6).

In order to prevail in this case, Plaintiffs had to establish by a preponderance of the evidence that Debtors willfully and maliciously injured the property. The Court finds that they have failed to carry that burden. Although the Court empathizes with the plight of a landlord left with a run down property, Plaintiffs failed to legally establish a claim under 11 U.S.C. § 523(a)(6).

### III.  CONCLUSION

For all the reasons cited above,  the Court finds the debt at issue owed to Plaintiffs by Debtors is not non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated:       January 23, 2007             /s/ Dennis R. Dow

THE HONORABLE DENNIS R. DOW
UNITED STATES BANKRUPTCY JUDGE


Copies to:
Mark A. Wortman
Gary W. Collins